## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

JAY G. HARRIS, personal
representative of JOSE MARTIN
MORENO, JR., deceased;
NORMA R. MORENO, individually
and as Mother and Next Friend of
CATHERINE MORENO and GINA
MORENO surviving minor children of
JOSE MARTIN MORENO, JR., deceased,

      Plaintiffs,

v.                                                                                  Case No. 1:24-cv-00331-MLG-GJF

NABORS DRILLING
TECHNOLOGIES USA, INC.,
NABORS DRILLING USA LP,
MATTHEW HALE; and DEVON
ENERGY CORPORATION,

      Defendants.

### MEMORANDUM OPINION AND ORDER DENYING
### PLAINTIFFS' MOTION FOR REMAND TO STATE COURT

      This matter comes before the Court on Plaintiffs' Motion for Remand ("Motion"). Doc.

12. Having reviewed the parties' submissions and the applicable law, the Court denies the Motion.

### BACKGROUND

      This case presents a tragic set of facts. On July 4, 2022, at Drilling Rig M7505 (the "Rig")

in Eddy County, New Mexico, a fatal accident occurred (the "Incident"). Doc. 1-2 at 3-4 ¶ 12;

Doc. 12 at 2. That day, Jose Martin Moreno, Jr.—a derrickman working for Defendant Nabors

Drilling Technologies USA, Inc. ("NDTUSA") and/or Nabors Drilling USA, Inc. (collectively

"Nabors")—"was crushed to death between a manifold and a handrail on the rig platform during

the disassembly of the drilling rig." Doc. 12 at 2.

Plaintiffs[1] subsequently filed this lawsuit in the First Judicial District Court in Santa Fe County, New Mexico, alleging claims based on negligence and wrongful death against Nabors, Devon Energy Corporation, and Matthew Hale (collectively "Defendants"). *Id.* After being served, NDTUSA filed a Notice of Removal in this District pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446. Doc. 1 at 1. Although diversity of the parties was lacking, NDTUSA contended that Plaintiffs fraudulently joined Hale—the lone New Mexico defendant. *Id.* at 4 ¶¶ 15-16. Thus, according to NDTUSA, this Court should disregard his citizenship and exercise jurisdiction over this matter. *Id.* at 3 ¶ 7. Plaintiffs argue otherwise and filed a Motion for Remand, Doc. 12, which the Court denies.

## LEGAL STANDARD

A defendant may remove a civil action from state to federal court provided the matter satisfies one of the requirements for original jurisdiction. 28 U.S.C. § 1441(a). To effectuate removal, a defendant must

> file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).

A plaintiff may challenge the removing defendant's invocation of federal jurisdiction by filing a motion to remand. 28 U.S.C. § 1447(c). Once a motion to remand is filed, "the party seeking to sustain the removal . . . bears the burden of demonstrating that removal was proper." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (quoting *Hodges v.*

---

[1] Plaintiffs include Jay G. Harris as the Personal Representative of Jose Martin Moreno, Jr., and Norma R. Moreno who appears individually and as Mother and Next Friend of Catherine Moreno and Gina Moreno, the surviving minor children of Moreno. Doc. 12 at 1.

*Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994)). In considering the propriety of removal, one must be mindful that federal courts are of limited jurisdiction, and that "[w]e must presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Woods v. Ross Dress for Less, Inc.*, 833 F. App'x 754, 756 (10th Cir. 2021) (quoting *Dutcher v. Matheson*, 840 F.3d 1183, 1189 (10th Cir. 2016)). Further, removal jurisdiction is at odds with principles of federalism and contravenes the general deference afforded to plaintiffs when picking a forum. *See Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 531 (S.D.N.Y. 2005). For these reasons, removal statutes are to be narrowly construed and all doubtful cases should be resolved in favor of remand. *Pritchett v. Off. Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005) ("It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." (citations omitted)).

Where, as here, removal is predicated on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the removing defendant must establish that complete diversity exists between all named plaintiffs and all named defendants, and that the amount in controversy exceeds $75,000. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) ("A federal court has diversity jurisdiction in suits between citizens of different states where the amount in controversy exceeds $75,000."). This inquiry is typically straightforward. However, in matters like this case where a defendant alleges that a plaintiff has fraudulently joined a party solely to defeat federal jurisdiction, the analysis is more nuanced.

"Fraudulent joinder is an exception to the complete diversity requirement that, in effect, allows a court to disregard the citizenship of a party who was fraudulently joined to defeat federal jurisdiction." *Mendoza v. Home Depot*, Civ. No. 23-1014, 2024 U.S. Dist. LEXIS 78982, at *6

(D.N.M. Apr. 30, 2024). The removing defendant must meet a high standard to succeed on their fraudulent joinder claim. Specifically, "the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013); *see also Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000). All factual disputes and legal ambiguities should be resolved in the plaintiffs' favor. *Montano,* 2000 WL 525592, at *1.

## DISCUSSION

The success of Plaintiffs' Motion turns on the resolution of two questions. First, whether the New Mexico Workers' Compensation Act (the "NMWCA" or the "Act"), NMSA § 1978, § 52-1-1 et seq., shields Hale from individual liability—that is, whether it applies to Hale at all. It does. Second, whether Plaintiffs can work around the NMWCA exclusivity provision by establishing a potential and legally cognizable *Delgado* claim against Hale. *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148. Plaintiffs cannot. Consequently, the Court denies Plaintiffs' Motion.

## I.    The NMWCA shields Hale from individual liability under its exclusivity provision.

The NMWCA provides that any employer who has complied with the Act's insurance requirements *and any employees of the employer*, *including employees who serve in managerial or supervisory roles*, generally cannot be held liable for the injury or death of any employee, except as provided in the Act. NMSA 1978, § 52-1-8 (1989). Here, the parties agree that Hale is a supervisory employee, that Moreno died while in the course of his employment with Nabors, and that Plaintiffs' claims aim to hold Hale liable for Moreno's death in ways the Act does not supply. The Court has not identified, and the parties have not raised, any applicable statutory exception to the NMWCA's exclusivity provision. *See* NMSA 1978, § 52-1-9 (1973) (providing that the

NMWCA is the exclusive right to compensation for nearly all job-related injuries). Thus, the NMWCA renders Hale immune from Plaintiffs' claims.

## II.    Even if this Court entertains the idea that a *Delgado* exception applies to employees, Plaintiffs cannot possibly establish such a claim against Hale.

There is at least one way around the NMWCA's exclusivity provision. In the 2001 case of *Delgado*, the Supreme Court of New Mexico created a narrow exception to the NMWCA's exclusivity requirement in those circumstances "when an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the [NMWCA]." *Delgado*, 2001-NMSC-034, ¶ 34. Although the parties acknowledge that *Delgado* may sometimes provide for a departure from a strict construction of the NMWCA's exclusivity provision, they disagree about its scope.

Plaintiffs argue that *Delgado* may expose employees to liability outside of the NMWCA, Doc. 12 at 1, while NDTUSA claims that *Delgado* exposes only employers, not employees. Doc. 14 at 8-9. The Court need not resolve this legal question here, because it is ultimately immaterial to resolution of the matter presented. NDTUSA has successfully shown that there is no way for Plaintiffs to successfully establish a *Delgado* claim against Hale.

To clear the high hurdle the New Mexico Supreme Court established in *Delgado*, the plaintiffs must satisfy three elements[2] and plead or present facts that the employer or employee met them through actions that were similarly egregious to the employer's actions in *Delgado*. *See Morales v. Reynolds*, 2004-NMCA-098, ¶ 14, 136 N.M. 280, 97 P.3d 612 ("So as not to eviscerate

---

[2] Plaintiffs must show that "(1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury." *Delgado*, 2001-NMSC-034, ¶ 26.

the essential provisions of the Act, we hold that plaintiffs must plead or present evidence that the employer met each of the three *Delgado* elements through actions that exemplify a comparable degree of egregiousness as the employer in *Delgado* in order to survive a pre-trial dispositive motion.").

The facts presented in *Delgado* are horrific. Reynaldo Delgado worked at Phelps Dodge smelting plant in New Mexico. *Delgado*, 2001-NMSC-034, ¶ 3. One summer night, Mike Burkett and Charlie White supervised Delgado's shorthanded crew while they worked to make up for economic losses following a recent ten-day shutdown. *Id.* ¶ 4. "Suddenly, the crew experienced an especially dangerous emergency known as a 'runaway.'" *Id.* Molten rock (in this case molten slag) flowed over a fifteen-foot chute known as a ladle at an atypically fast speed. *Id.* Delgado's supervisors and employer forced him to enter a tunnel, operate a truck known as a kress-haul "under runaway conditions" for the first time, and "attempt to remove the ladle alone" while "the molten slag still pour[ed] over its-fifteen foot-brim." *Id.* Delgado radioed to his supervisor White that he lacked the qualifications needed to safely remove the ladle. *Id.* ¶ 5. White insisted that Delgado continue. *Id.* Not long after Delgado entered the tunnel, the lights failed and from the tunnel's mouth flowed black smoke. *Id.* Delgado emerged completely engulfed in flames. *Id.* He cried out to his coworkers, "'I told them I couldn't do it. They made me do it anyway. Charlie [White] sent me in.'" *Id.* Three weeks later, Delgado died. *Id.*

Other courts have commented on and characterized *Delgado's* egregious set of facts. The New Mexico Court of Appeals pointed out that the case involved deadly conditions, economic greed influencing the choice to ignore safety measures, a total absence of training, and a complete refusal to help a worker in a frightening situation. *Morales*, 2004-NMCA-098, ¶ 10. These remarkable characteristics were also addressed in *Anchondo v. Basic Energy Services, Inc.*, where

the court noted that *Delgado* presented (among other things) an emergency situation, a task entirely unfamiliar to the employee, and an employee repeatedly objecting to the task. No. 14-CV-0624, 2015 WL 12777961, at *6 (D.N.M. Mar. 18, 2015).

The Court contemplates more of the egregious *Delgado* aspects later. But for now, three are especially noteworthy. First, there is no indication that Moreno faced a fast-moving situation requiring immediate attention. *See* Doc. 1-2 at 3-4 ¶¶ 12-13. As far as the Court can ascertain, Moreno moved at the same pace as any other day. Second, there is no evidence suggesting Hale created a sense of urgency or demanded that Moreno rush into a life-threatening situation. According to Hale, on the day Moreno died at work, Hale "was not working at the Rig." Doc 1-3 at 2 ¶ 5. Finally, Hale "never personally directed, planned, instructed, controlled, or supervised the specific work being performed by [Moreno] at the Rig at the time of the Incident." *Id.* at 2 ¶ 7. In other words, Moreno was not facing an emergency nor did Hale disregard particularly dangerous conditions.

Other unique considerations leading to the *Delgado* decision—including the individual's lack of familiarity with his assigned task and the employer's economic greed as motivation—are also absent from this case. With respect to the novel task Delgado faced, there is no reason to believe that Moreno faced anything remotely similar. According to Plaintiffs, Moreno "was crushed to death between a manifold and a handrail on the rig platform during the disassembly of the drilling rig." Doc. 12 at 2. While gruesome and unequivocally tragic, there does not appear to be anything unordinary about the disassembly of a drilling rig. Plaintiffs provide the Court with no reason to think otherwise. Finally, no specific allegations of economic greed can be found in Plaintiffs' filings.

A closer look at *Anchondo* and *Morales* further supports the Court's reasoning and conclusion. The Court starts with *Anchondo*. In that case, a derrickman's employer and supervisor required Anchondo (the derrickman) to climb a ninety-six-foot derrick to remove, realign, and reinsert rods into a well. *Anchondo*, 2015 WL 12777961, at *1. Anchondo noticed paraffin on the rods—a dangerous substance when built up on these types of rods—and called down to his supervisor that the rods needed to be treated with hot oil to clear the paraffin. *Id.* Anchondo's supervisor (Esparza), noticed the paraffin buildup and that it had a black color. *Id.* This shade of paraffin is "by the far the stickiest," and here sticky is dangerous. *Id.* The next day, Esparza ordered Anchondo back up to pull more rods coated with black paraffin. *Id.* at *2. The paraffin buildup caused the derrick to shake, and a rod covered in black paraffin shot toward Anchondo's head. *Id.* To avoid the rod hitting his head, Anchondo put his hand out. *Id.* The rod stuck to his glove, and his thumb remained exposed to the spinning rod. *Id.* These forces ripped his left thumb from his hand. *Id.*

The precipitating facts[3] in *Anchondo* are more in line with *Delgado* than those presented in this case. Esparza knew Anchondo (1) faced a dangerous situation (that the rods were coated in black paraffin), (2) felt unsafe (that dealing with black paraffin covered rods put him in danger), and (3) had asked for help but did not receive it (asked for the rods to be treated with hot oil but was denied). *Id.* at *2-3. But Esparza ordered him to proceed nevertheless. *Id.* at *2. Yet, even though the facts are more egregious in *Anchondo* than they are here, the *Anchondo* court found that the plaintiffs failed to meet the egregiousness standard required. *Id.* at *11.

---

[3] The Court recognizes that the degree of harm is much worse here for Moreno than for Anchondo—the first died and the second lost his thumb. That is a clear difference. But it does not bear on the egregiousness analysis, as what matters in that calculus is not so much the magnitude of suffering caused but instead the factors that led to the harm itself.

The New Mexico Court of Appeals's case *Morales v. Reynolds* also deserves attention. 2004-NMCA-098. There, Morales worked as an employee for Foamex, and Reynolds supervised Morales. *Id.* ¶ 2. While fixing a pump, a chemical called toluene diisocyanate hit the hood of Morales's protective gear. *Id.* Morales later experienced negative symptoms including chest pains, shortness of breath, and wheezing. *Id.* Morales claimed that Foamex and Reynolds "ordered him to fix the pump 'even though they knew that [Morales] would suffer grave injuries as a result of such conduct.'" *Id.* ¶ 3. The *Morales* court concluded that such facts were not egregious enough to create a *Delgado* exception. *Id.* ¶ 24.

The *Morales* court also ruled against another plaintiff (Fernandez). *Id.* ¶ 30. While that plaintiff worked as an employee for Brown-Minneapolis Tank Company ("Brown") on the scaffolding of a tank, another employee accidentally dropped a metal sheet while working above Fernandez. *Id.* ¶ 4. The sheet hit Fernandez on the side of the head, causing him to fall approximately sixteen feet. *Id.* Fernandez wore no safety gear at the time, and he sustained injuries. *Id.* The *Morales* court concluded that Brown's failure to provide Fernandez with safety equipment (despite doing so in the past) "did not approach the certainty or egregiousness of the employer in *Delgado.*" *Id.* ¶ 29.

The preceding case law serves as a useful comparator for the issue presented here. Plaintiffs argue that Moreno did not receive something (whether that be training, the right equipment, or any other number of items, services, or conditions), Moreno tragically died, and Defendants should have done better. Doc. 1-2 at 3-4 ¶¶ 12-13. While those contentions may all be true, they do not suffice to meet the high bar necessary to overcome the NMWCA's exclusivity provision.

Ultimately, Plaintiffs fail to show that they can possibly establish a *Delgado* claim in state court. This is because of the undisputed lack of egregiousness present in this case, which is required

by *Delgado* and its progeny. And because the NMWCA shields Hale from all of Plaintiffs' claims, it is impossible for Plaintiffs to establish a claim against Hale in state court. Consequently, the Court finds that Plaintiffs fraudulently joined Hale.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion for Remand. Doc. 12. It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA