**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

JAY G. HARRIS, et al.,

      Plaintiffs,

v.                                         Civ. No. 24-331 MLG/GJF

NABORS DRILLING TECHNOLOGIES,
et al.,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiffs' *Motion to Compel Production from Defendant Nabors Drilling Technologies USA, Inc.* (Dkt. No. 126), in which Plaintiffs seek three categories of documents: (1) root cause analysis; (2) safety policies and procedures; and (3) job safety analysis and job hazard analysis. *See* Pl.'s Mot. 11-16, Dkt. No. 126. Defendant Nabors Drilling Technologies USA, Inc. ("Defendant" or "Nabors") filed a response in which it asserted that it has produced or is producing the latter two categories, but it opposed production of the root cause analysis and related documents. Def.'s Resp. 1, Dkt. No. 128. Plaintiffs replied. Pl.'s Reply, Dkt. No. 132. In response to a request from the Court, the parties filed a Joint Notice clarifying that the issues have narrowed and there is only one remaining issue in dispute: the root cause analysis and related documents. Joint Notice, Dkt. No. 137. Additionally, by separate email, the parties confirmed that the only remaining requests for production ("RFPs") in dispute are RFP 17, 18, and 19.

The Court held a hearing on the motion on July 8, 2026. At the hearing, the Court ordered Nabors to produce the documents in dispute for *in camera* inspection.  Nabors timely complied. Now having considered the briefing, arguments of counsel, documents produced *ex parte*, and the

relevant law, the Court concludes that Plaintiffs' motion to compel should be granted as to RFPs 17, 18, and 19 and denied as moot as to the safety policies and procedures, job safety analysis, and job hazard analysis.

## I.    FACTUAL BACKGROUND

This case arises from a tragic workplace accident in which Jose Martin Moreno, Jr., who was working as a derrick hand for Nabors, sustained fatal injuries on July 4, 2022, at a well site in Eddy County, New Mexico. *See* Second Am. Compl. ¶¶ 12, 16-25, Dkt. No. 68; Answer ¶ 17, Dkt. No. 31. According to Plaintiffs, Mr. Moreno was removing bolts from the flanges of the flowline manifold when the welded supports securing the flowline manifold failed, causing the flowline to shift forward and crushing him between the flowline and handrail. Second Am. Compl. ¶¶ 18-19. Plaintiffs sued Nabors and others for negligence, negligence per se, and gross negligence. *Id.* ¶¶ 20-29. Plaintiffs allege Nabors owned and/or built the rig and directed the disassembly activities on the day of the incident. *See id.* ¶ 20.

During discovery, Plaintiffs obtained a July 2022 Nabors PowerPoint document, which included a brief description of what occurred on July 4, 2022. *See* Pls.' Ex. 5, Dkt. No. 126-5; Pls.' Mot. 6, Dkt. No. 126; Def.'s Reply 4, Dkt. No. 128. Nabors presented the document at a meeting between it and Devon Energy Corporation ("Devon") as part of Devon's event reporting and investigation protocol wherein the contractor investigates incidents related to its equipment and presents its findings to Devon. *See* Pls.' Ex. 5, Dkt. No. 126-5; Wright Dep. 19:19-120:13, Dkt. No. 132-3. The document indicated that Nabors' "investigation team is progressing the TapRoot cause analysis to identify all causal factors and develop corrective actions." Pl.'s Ex. 5, Dkt. No. 126-5.

As relevant here, Plaintiffs propounded RFPs related to Nabors' investigation of the incident. In RFP 17, Plaintiffs requested the production of "all final and/or draft root cause analysis and/or reports relating to the accident in question." Def.'s Ex. 1 at 5, Dkt. No. 126-1. Plaintiffs asked in RFP 18 for "all documents which identify the members or participants in any accident investigation or root cause determination performed by Defendant(s)." *Id.* And finally, Plaintiffs sought in RFP 19 "all investigation reports, root cause analysis, and/or reports relating to the accident question created or reviewed by any third party." *Id.* at 6.

According to Plaintiffs, Defendant did not provide any documents responsive to RFPs 17-19. Pls.' Mot. 3, Dkt. No. 126. Instead, Nabors produced a privilege log on April 2, 2025. *See* Privilege Log, Dkt. No. 126-2; Def.'s Ex. A, Dkt. No. 128-1. As relevant to this dispute, the privilege log contained an entry for "20220816- SIF Incident Investigation Report West Texas M7505 FTL v2 4860-3384-9134" with the following description: "Review of incident in draft form and with comments on it from Nabors's Outside Counsel expressing his thoughts, impressions, and comments as to the substance and form of the review." *Id.* at 2. Defendant asserted as the privilege for this entry: "Attorney/client privilege and work product. Prepared in anticipation of litigation with assistance of retained counsel." *Id.*

On April 15, 2026, Plaintiffs' counsel emailed defense counsel requesting production of the root cause analysis and disagreeing that the documents are privileged. *See* Pls.' Ex. 3, Dkt. No. 126-3 at 3 of 4. Defense counsel declined to produce the documents, maintaining Defendant's objection based on attorney-client privilege and work product doctrine and referring Plaintiffs to their April 2, 2025 assertion of privilege. *See id.* at 2 of 4.

Plaintiffs filed their motion to compel on April 28, 2026. Pl.'s Mot., Dkt. No. 126. In addition to seeking documents regarding any root cause analysis (RFPs 17-19), Plaintiff sought a

copy of all safety policies and procedures (RFP 24), any job safety analysis (RFP 46), and any job hazard analysis (RFP 47). *See id.* at 3-8. Nabors responded that it had produced the majority of documents responsive to RFPs 24, 46, and 47, and would complete its rolling production by May 15, 2026. Def.'s Resp. 3, Dkt. No. 128. It thus argued that the motion as to those documents is moot. *Id.* Plaintiffs also agree that RFPs 24, 46, and 47 are no longer at issue. *See* Pl.'s Reply, Dkt. No. 132; Joint Notice, Dkt. No. 137.

With respect to RFPs 17-19, Defendant argues that it need not produce any root cause analysis or related documents because Plaintiffs waived their objection to Nabors' assertion of privilege when they failed to file their motion to compel in the time allotted by this District's local rules. Additionally, Defendant asserts that it properly objected to the production of the documents in its privilege log and that the responsive documents are protected by both the attorney-client privilege and the work product doctrine. Plaintiffs disagree. This Court held a hearing on the motion to compel, as narrowed by the Joint Notice, and took the motion under advisement. Clerk's Minutes, Dkt. No. 140.

## II.    STANDARD

Under Federal Rule of Civil Procedure 37(a)(3)(B), if a party fails to produce documents as requested under Rule 34, the party seeking discovery may file a motion to compel. *See* Fed. R. Civ. P. 37(a)(3)(B). When a responding party objects to a request for production, the grounds for the objection must be stated "with specificity." Fed. R. Civ. P. 34(b)(2)(B).

Rule 26 of the Federal Rules of Civil Procedure defines the scope of discovery:

Parties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim* or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts should "liberally construe" Rule 26. *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007). While discovery is broad, it is not without limits. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

## III.   ANALYSIS

### A.  Compliance with Rule 37

As an initial matter, Defendant argues that the motion to compel should be denied for failure to comply with Federal Rule of Civil Procedure 37(a)(1). Def.'s Resp. 7, Dkt. No. 128. That rule requires that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, Local Rule 7.1(a) says that a motion omitting a "recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR Civ. 7.1(a). According to Defendant, Plaintiffs' motion does not contain the requisite statement and the attachment of the emails between counsel outlining the dispute is not enough.

While Plaintiffs' motion does not contain the requisite statement within the body of the motion, the essence of the statement is contained in the emails Plaintiffs attached to their motion as Exhibit 3 (Dkt. No. 126-3). The emails show a good faith attempt to resolve the dispute and to obtain the documents without court action. To strike the motion under Rule 37(a)(1) on this record would be to exalt form over substance. The Court therefore will not deny Plaintiffs' motion to compel for failure to include a statement showing good-faith conferral.

### B. RFP 17

The Court conducted an *in camera* review of the documents potentially subject to RFP 17 and finds that only one document is responsive thereto: "20220816 – SIF Incident Investigation Report West Texas M7505 FTL v2," the 26-page final version of the root cause analysis (hereinafter "Final RCA"). The Court's analysis as to RFP 17 will thus focus on that document.

#### 1. Plaintiffs' motion to compel was timely.

As relevant here, Local Rule 26.6 provides that a party served with objections to an RFP "must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days of service of an objection unless the response specifies that documents will be produced or inspection allowed." D.N.M.LR-Div. 26.6. The failure to adhere to the deadline "constitutes acceptance of the objection." *Id.* The Court may change the 21-day period for good cause shown. *Id.*

Defendant argues that Plaintiffs long ago accepted the objection to RFP 17 and cannot challenge it now. Because Plaintiffs were served with the privilege log on April 2, 2025, yet failed to file a motion to compel until over a year later, Nabors contends the Court should deny the motion to compel. Plaintiffs counter that they did not move to compel when they received the objection to RFP 17 because Defendant stated it would produce certain documents and they understood the objection to be limited to "draft" versions of the requested documents, not the final product.

In RFP 17, Plaintiffs requested "all *final and/or draft* root cause analysis and/or reports relating to the accident in question." Def.'s Ex. 1 at 5, Dkt. No. 126-1 (emphasis added). In response, Nabors objected to "the portion of this request that seeks any *draft* versions of the requested documents to the extent such documents are protected by attorney-client privilege and/or work product doctrine." *Id.* (emphasis added). Nabors then stated it would produce NDTUSA000504-000509 subject to a Confidentiality Agreement and Protective Order. *Id.* The

6

Court agrees with Plaintiffs that the objection did not adequately inform them that Nabors objected to producing a final, completed version of the root cause analysis and that it was withholding it in full. By parsing the language and objecting only to "draft" root cause analyses, Nabors failed to object to the "final" versions. Plaintiffs therefore had good cause for not moving to compel production of the final root cause analysis 21 days after the objection was made. Consequently, Plaintiffs accepted the objection to "draft" root cause analyses, but not to "final" versions thereof. The motion to compel is therefore timely as to the latter and Plaintiffs did not waive a challenge to Nabors' assertion that the attorney-client privilege and work product doctrine protect the final version of its internal investigation/root cause analysis documents.

### 2. Nabors waived its privilege as to the final root cause analysis.

When a party withholds documents based on a privilege, the party must "expressly make the claim" and describe the nature of the withheld documents that would enable the other party to assess the claim. Fed. R. Civ. P. 26(b)(5). A party who produces an inadequate privilege log may be deemed to have waived the privilege. *Anaya*, 251 F.R.D. at 651.

Here, Nabors' objection was limited to draft versions, not the final version of the report. Moreover, Defendant produced a privilege log, which again used the term "draft form" to describe the report of the incident. That limitation did not indicate that Defendant was withholding a final version of the report under the attorney-client privilege and work product doctrine. Defendant's privilege log did not fairly identify the final version of the root cause analysis and thus was inadequate to assert a privilege over it. For these reasons, the Court finds that Nabors failed to object to production of the final version of the report and waived the assertion of the attorney-client privilege and work product doctrine as to the Final RCA.

### 3. Nabors failed to establish that attorney-client privilege or work product doctrine applies.

7

Alternatively, even if Defendant did not waive assertion of its privileges as to the final report, the Court finds that Nabors did not demonstrate that either the attorney-client privilege or work product doctrine shield production of the Final RCA. In a diversity case such as this, state law governs the attorney-client privilege and federal law governs the work product doctrine. *See Murphy v. Gorman*, 271 F.R.D. 296, 303 (D.N.M. 2010).

### a. Attorney-client privilege

"The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor.'" *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983)). Its purpose is to encourage full and candid discussion between attorneys and clients, promoting the public interest in law and the administration of justice. *Public Service Co. of New Mexico v. Lyons*, 2000-NMCA-077, ¶ 25, 129 N.M. 487. The attorney-client privilege nevertheless must be "strictly construed," *Trammel v. United States*, 445 U.S. 40, 50 (1980), as it is an exception to the general rule that the public has a right to evidence, *Ramirez v. Marsh*, 2025-NMSC-050, ¶ 43, 580 P.3d 768. "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *In re Grand Jury Proceedings*, 616 F.3d at 1182 (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995)). Instead, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client." *Id.* (quoting *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)). *See also Ramirez*, 2025-NMSC-050, ¶ 44 (explaining that attorney-client privilege protects confidential communications made between client and client's lawyer or representative

8

for purpose of facilitating or providing professional legal services to client). The burden of establishing that the attorney-client privilege applies is on the party asserting it. *Id.* at 1183.

Nabors has not shown that the Final RCA contained confidential communications to an attorney to obtain legal assistance or legal analysis from an attorney. Rather, as the record reflects, the report was created as part of Nabors' standard policy to perform an investigation if there is an OSHA-recordable incident, regardless of litigation. *See* King Dep. 152:9-153:4, Dkt. No. 132-6. The Final RCA followed a standard template focusing on the company's policies, practices, and procedures. While attorneys were nominally involved, there is no evidence that the Final RCA contains confidential communications related to legal advice or strategy. The mere involvement of an attorney is not enough to invoke the privilege. Moreover, the report is highly factual. Having reviewed the document, the Court finds that the Final RCA does not contain any of the hallmarks of the attorney-client privilege and is not protected by that privilege. *Cf. Payton v. New Jersey Turnpike Authority*, 691 A.2d 321, 334 (N.J. 1997) ("[W]hen an attorney conducts an investigation not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose, the privilege is inapplicable…. That result obtains even where litigation may eventually arise from the subject of the attorney's activities.").

### b.  Work product doctrine

According to Federal Rule of Civil Procedure 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). This work product privilege "protects against disclosure of the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'" *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (quoting Fed. R. Civ. P. 26(b)(3)). "As such, the work-

product doctrine only prevents disclosure of information that was prepared by the attorney in anticipation of litigation or for trial." *In re Grand Jury Proceedings*, 616 F.3d at 1184. The doctrine guards against "divulging the attorney's strategies and legal impressions" and not the "facts concerning the creation of work product or facts contained within work product." *Resolution Trust*, 73 F.3d at 266. The party asserting the work-product doctrine carries the burden of showing that it applies and has not been waived. *Anaya*, 251 F.R.D. at 651.

Plaintiffs argue that Nabors must produce the Final RCA because it has not shown that it was created for the purpose of litigation, rather than in the ordinary course of Nabors' business pursuant to its policies and procedures. The Court agrees. As mentioned above, Nabors has not shown that the Final RCA contains attorney strategy, legal impressions, or the like. Rather, it is a factual analysis of the cause of the incident. The motivating purpose behind the document was not to aid in litigation; rather, it was created as part of Nabors' standard practice when an OSHA-recordable event occurs. It is thus not protected from disclosure by the work product doctrine. *See Resolution Trust*, 73 F.3d at 266 ("[W]ork product does not preclude inquiry into the mere fact of an investigation."); *S.E.C. v. Goldstone*, 301 F.R.D. 593, 651 (D.N.M. 2014) (explaining that work-product protection applies when motivating purpose behind creation of document was to aid in litigation). Accordingly, the Court will order the production of the Final RCA and deny Defendant's request for a Rule 26(c) protective order regarding the document.

### C. RFP 18

Plaintiffs request that Nabors produce "all documents which identify the members or participants in any accident investigation or root cause determination performed by Defendant(s)." Pls.' Ex. 1 at 5, Dkt. No. 126-1. Defendant replied that it could not respond to the request; it would need "further discussion and conference with Plaintiffs' counsel about this request;" and after the

10

parties conferred, it would supplement its response. *Id.* Defense counsel at the hearing stated that its corporate representative during his deposition supplied the information responsive to RFP 18. *See* July 8, 2026 Liberty Recording, ABQ-Brazos_20260708_093742, at 11:06:43-11:07:30. She also offered, however, to answer in the form of an interrogatory with names, roles, titles, and whether the member is still at Nabors. *Id.* Defendant thus does not oppose supplementing its response to RFP 18. Accordingly, the Court will grant Plaintiffs' request to compel as to RFP 18.[1]

### D. RFP 19

Plaintiffs additionally request in RFP 19 "all investigation reports, root cause analysis, and/or reports relating to the accident question created or reviewed by any third party." Pls.' Ex. 1 at 6, Dkt. No. 126-1. In response, Nabors stated that it was "currently unaware of any such documents created by any third party" and that it "cannot adequately determine what has been reviewed by a third party." *Id.* At the July 18, 2026 hearing, the Court inquired whether there are any responsive documents created by or reviewed by a third party. *See* July 8, 2026 Liberty Recording, ABQ-Brazos_20260708_093742, at 11:07:46-11:09:03. Defense counsel replied that, as to a document created by a third party, the only responsive document it has is the OSHA investigation, which Plaintiff already possesses. *See id.* With respect to documents reviewed by a third-party, she said that a responsive document would be the presentation that was given to Devon, and possibly a one-pager that was shared with another client. *See id.* To the extent documents responsive to RFP 19 have not already been produced to Plaintiffs, Defendant should supplement their disclosures. The Court will therefore grant Plaintiffs' motion to compel as to RFP 19.

### E. No Attorney's Fees will be awarded.

---

[1] The Court notes that the Final RCA includes a list of eleven members of the Investigation Team. The Court also notes that, in contrast to Nabors' representations at the hearing that the team was "led by" counsel, the Final RCA lists the two lawyers last and identifies them only as "Legal Support."

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A)(iii), the Court finds that each side to this dispute had a legitimate, good faith legal position to defend, so it will not award attorney's fees to either side.

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion to Compel Production from Defendant Nabors Drilling Technologies USA, Inc.* (**Dkt. No. 126**) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiffs' request to compel the production of the Final RCA, as requested in RFP 17, is **GRANTED**.

2. Plaintiffs' request to compel the production of documents responsive to RFP 18 and RFP 19 is **GRANTED**.

3. Plaintiffs' request to compel production of Nabors' safety policies and procedures (RFP 24), Job Safety Analyses (RFP 46), and Job Hazard Analyses (RFP 47) is **DENIED AS MOOT**.

**SO ORDERED**.

_____
**THE HONORABLE GREGORY J. FOURATT**
**UNITED STATES MAGISTRATE JUDGE**